15-1122 Francisco Avelar Gonzalez v. Jefferson B. Sessions  Mr. Avelar is a gentleman from El Salvador. He applied for asylum in the United States after he was apprehended after entering illegally. He also applied for a withholding of removal and he also applied for a detact. We actually spent a lot of time, we do know the record. Could you tell us what issues you think are in front of the court, which issues we have jurisdiction over, because the respondent has taken the position that some of the issues you raise we do not have jurisdiction to address because you failed to exhaust administrative remedies. There are at least two issues here that we need to address. First of all, there is never explicit finding of credibility by the immigration judge. Does it have to be? Yes, Your Honor. However, Your Honor, there has to be, in immigration court we usually go step by step. We establish alienation, we establish removability, and at the hearing we usually establish whether the person is credible or not. A ruling actually in favor of your client said, I have severe doubts about his credibility, gave a number of reasons, inconsistencies in his testimony, differences between what he said in his testimony and his affidavit, differences between what he said in his initial statement and in his affidavit and in his testimony. The failure to mention in his declaration any incidents in the close to three-year period he remained in El Salvador. And the IJ said, under those circumstances, I'm going to require corroboration. All right, are you attacking the decision to require corroboration? We believe, Your Honor, that he should have been allowed to provide additional corroboration. I'm sorry? We believe that he should have been allowed to provide additional documentation. He provided additional documentation, which the IJ considered. There was a notarized letter from two people in the community, and then there was a letter from someone purporting to be an officer of ARENA. Correct, Your Honor. Okay, so the ARENA letter merely says he was a member of, an active member of ARENA, and because of the violence in the country, he had to leave. Okay? Generalized violence. The other two letters, the other notarized letter purported to be the statement of two people, the IJ misunderstood that that letter came from the parents. It didn't come from the parents. It came from two people who don't even say how they know your client. Right. Correct, Your Honor. That's correct. And they don't talk about the incidents that your client talks about at all, but they just refer to, vaguely, he received some threats in 2011, which he did not really put in his declaration. So what's the problem with the IJ's determination that he hadn't even shown that these incidents he was complaining about took place? Well, first of all, you know, Mr. Avalar-Gonzalez was barely 16 or 17 years old when a lot of these incidents happened. He was older when he testified. When he testified, yes. But at the time, he was about, like I said, 16 or 17 years old. And the courts in general had to give a little bit of leeway for people who were testifying regarding incidents that happened in childhood, Your Honor. So there's additional, you know, talking about Are you saying there was not substantial evidence in the record to support the IJ's and BIA's first determination that he had not met his burden of proof? That is correct, Your Honor. There's not substantial evidence of that, Your Honor. Okay. Do you want to move on to your next point? Yes, Your Honor. I know that the government does spend a lot of time arguing that Rivera-Koch should control this case, Your Honor. But again, this case is about pretty much a child when he was 16 years old, you know, that things happened to him. So this is why there should be some dispensation for him, you know, because of that, you know. The judge, the IJ, doesn't discuss that at all, I don't believe. He merely mentions it, but he doesn't allow for any dispensation based on his age, Your Honor. So on this corroboration issue, are you suggesting that there was something inappropriate, unreasonable, beyond the bounds of the IJ's authority in insisting that there be this corroboration? Well, Your Honor, there is some corroboration of everything that happened to him. Would you answer the question? Yes, of course. I think that there is indeed a – requiring additional corroboration was inappropriate to some degree. I do understand, for those of us who practice in immigration courts, that sometimes these hearings become a test of memory. Are you arguing that the corroboration sought, it was not available? That is an argument that is available to you, I believe, that there was something unreasonable about the mass of corroboration because it was not reasonably available. Right, and that is actually, you know, one of the points that the government makes is that, for example, a judge wanted to see a medical report from a friend of his. The judge found that your client's mother, perhaps father earlier, was still in Guatemala. El Salvador. El Salvador, pardon me. His aunt who got him involved in the political activity apparently was still in Guatemala, and yet they didn't provide any corroboration and nothing. The corroboration that came didn't come from those people. So what's the error in the ICA and the BIA saying that? Well, you know, first of all, one of the reasons that corroboration sometimes is difficult to get is because we're not dealing with terribly sophisticated people, first of all. He had five years from the time he first said he was going to seek asylum to get some corroboration. Again, you know, I did not represent Mr. Alvaro Gonzalez either at the BIA or the IJ level. You were his fourth lawyer. I am actually the second lawyer. You know, his lawyer was retiring as far as I know. He's living somewhere outside of the country. So it is tough to argue about something that the previous lawyer did not do. I understand I'm in a very difficult position with that. However, I do think that... Okay, so now you're onto the ineffective assistance claim, which the respondent says we have no jurisdiction over because that should have been presented to the BIA at least in a motion to reopen, and it never was. Right, and the reason it was never... First of all, he was still represented by the same council that represented him at the BIA level. Secondly... Well, you could have filed... I could have filed a motion to reopen, but only after I had received the administrative record, which was shortly, about a month before... No, he just chose to pursue it in this court rather than the BIA. Well, you know, like I said, we do have other arguments that we made in our briefs, you know, that we believe that are very reasonable and that Your Honor can decide favorably. Counsel, can I ask you about... This is an alternative basis for the decision of the IJ and the BIA. The alternative to not providing the required corroboration is also a finding that your client did not establish a well-founded fear of persecution. Now, somewhat helpfully, I would think, the IJ does make the observation that he can understand how somebody in your client's position would be afraid of returning to El Salvador. That would be a reasonable fear. But he goes on to observe that he does not feel the record links that reasonable fear to any of the grounds for persecution, in this case, political opinion. And he doesn't find any evidence to support that link in the country condition reports. I sense that you take issue with that. Absolutely, Your Honor. And the reason I do is because there is... A lot of the asylum cases from Central America tend to relate to gang violence and generalized violence. But this case actually does connect with political opinion, political activities. In what way? In what way is that connection made by this record? Well, there is a letter that he was a member of the Arena Party, which was the party in opposition to the government at the time. Yeah, but even that letter doesn't say... It says there's generalized violence, so he's trying to flee El Salvador to get away from it. It does not say, because he is a member of the Arena Party, his life was threatened and he needed to leave. But his testimony did say that, Your Honor, in most parts. I think I'm beyond my time, I don't know if... Yes, okay, thank you. Yes, thank you, Your Honor. Counsel. May it please the Court, Mario Luffi? You have to speak up and into the mic. I apologize. May it please the Court, Mario Luffi for the respondent. The Court should deny this petition for review because the agency properly concluded that petitioner failed to establish his eligibility for asylum and withholding of removal. First, the substantial evidence supports the agency's conclusion because petitioner failed to provide sufficient evidence to corroborate his claim. The two letters he did submit did not sufficiently corroborate his testimony. And second, the record evidence supports the conclusion that he did not establish a well-founded fear of future persecution in El Salvador because he did not show that his fear is objectively reasonable. First, the record does not compel the conclusion that he met his burden of proof by providing sufficient evidence. He did provide two letters from El Salvador, but these letters did not show or discuss any of the harms he himself testified about. Nor did they indicate that he was targeted because of his Arena Party membership. If anything, as Your Honor pointed out, the Arena Party letter undermines his claim because it states that he left El Salvador because of high crime conditions, specifically in his region. So it was reasonable for the agency to conclude that the evidence he submitted did not support his testimony and that he failed to meet his burden of proof in this case. I think you best turn to the area that Judge Lopez was questioning about, that one might have a reasonable subjective fear of future persecution in El Salvador, but that he had not put on enough evidence to link up his situation, political affiliation, and conditions in El Salvador. Do you want to talk about that? Yes, he may have established, based on what the immigration judge said, that he has a subjectively genuine fear of return, but he also has a burden to show that he has an objectively reasonable fear of return and that he has to establish that he individually would be singled out for harm in El Salvador and he failed to do so here. First, the evidence in the record, the country conditions evidence or the background evidence, do not indicate that Arena Party members like Petitioner are singled out for harm in El Salvador. Also, his testimony does not support it. Like your Honor noted, the letter that he submitted from Arena Party states that he left El Salvador because of generalized fear and not because he individually was singled out for harm. Can I also ask you about the country condition reports, which the IJ refers to, and indicates that it does not provide any support for the proposition that the violence in El Salvador, rather than just being generalized and widespread, was in fact targeted at members of the Arena Party. The country condition reports contain an article dated February 6, 2014, by Roger F. Noriega, and in that article he describes recent disclosures that the FMLN, that's the ruling party in El Salvador at the time that the Petitioner here is concerned about, there were recent disclosures that the FMLN has made a pact with the violent gangs, allegedly paying gangsters to mobilize voters and intimidate opposition supporters. This is exactly what the Petitioner is describing, and exactly what he says that he is afraid of. That if he goes back to El Salvador, he is a member of the Arena Party, that he will be subjected to violence by these gangs at the behest of the FMLN party, so that he is in fact, it's his argument, that he is being persecuted by the government because of his political opinions. With this in the record, is it appropriate, was it right for the IJ to say there is nothing in the record that supports his political persecution claim? The evidence does not compel the conclusion that he has of El Salvador. The IJ says there is nothing. There is something. Haven't we sent cases back in the past when an IJ makes an assertion that there is nothing in the record to support a proposition? In fact, there is. This article does not specifically state that the Arena Party members are singled out for harm in El Salvador. The Arena Party, with respect to the FMLN, they are the opposition party, are they not? Correct, they are. But it doesn't specifically state that the Arena Party members themselves are singled out for harm because of their Arena Party membership. It discusses some type of voter intimidation in advance of the 2014 election, I believe, if I'm correct. Also, the country conditions evidence indicate that at least in April of 2016, any kind of gang support that the FMLN had broke down because the gang members felt like they were betrayed by the party. So I'm not sure if that indicates that the record compels the conclusion that he has a well-founded fear of future persecution in El Salvador. Counsel, it appears that a past persecution claim was waived. That was not pursued before the BIA. But in terms of informing a well-founded fear of future persecution, can't those past incidents that he describes of being with a group that was shot at, that is a group of arena supporters who were shot at, of being confronted by individuals with knives, who objected to his arena t-shirt, actually being physically assaulted after a soccer game by supporters of the FMLN. If you look at all of that, and then this evidence in the country condition reports that the FMLN is using the gangs to intimidate opposition, if you put all that together, doesn't that support the proposition that he had a reasonable fear of persecution on the basis of his political affiliation if he returned? Certainly his past harm establishes subjectively genuine fear, but he also has to show that his fear is subjectively reasonable. He did not testify that he himself has been sought out after he left El Salvador in 2012 or that anyone has been threatening him since 2012. He also testified in direct examination that he did not suffer any other harm after the 2009 incident until he left El Salvador in 2012. And at the end of his direct testimony, he indicated that he was specifically asked if there is anything else he wants to add, that his attorney did not question him about, and he stated that no, he did not want to add anything. So on these facts, the record simply does not compel the conclusion that he has about any fear of future persecution of returning to El Salvador. Judge Stahl, do you have any questions? I do not. None. Okay, thank you. Thank you. Thank you both. Thank you.